2290 Clark against the Secretary of Veterans Affairs. Mr. Unruh. Good morning, your honors. May it please the court, my name is John Robert Unruh and I am representing Mr. Charles Clark here. The issue before the court this morning is certain presumptions at 38 CFR section 3.303B and as the court held in the Walker case there are essentially two paths to service connection under 3.303B and this case involves the second path where a chronic condition is later diagnosed after service or after the presumptive period and the claimant is pointing to a continuity of symptomology to establish the link or the nexus between the chronic condition and service. That is what occurred in this case when Mr. Clark first applied for service-connected disability benefits for his mental health condition in 1978 and had a diagnosis at that time of paranoid schizophrenia which is one of the presumptive chronic conditions listed at 3.309. Excuse me, good morning. Mr. Unruh, this is Judge Prost. The dates here are you have to on the connection between the 1979 rating or what are we you're talking about 1970. So you're saying you're saying the 19 you have we're talking in terms of the CUE we're talking about the 1979 rating, right? That's correct, your honor. Okay, so how does that fit into the picture you were just talking about here? Okay, because the rating at that time did not apply the analysis at 3.303B. They did not look at the diagnosis of paranoid schizophrenia at that time and the continuity of symptomology that was present. And our contention is had they done that they would have found that a clear and unmistakable error had occurred and granted service connection for the chronic condition that Mr. Clark had been diagnosed with at the time of the application while the rating decision was pending. And what date are you relying on then as to which the service connection would be measured? Well, I'm not trying to change the question, your honor. In requesting compensation for service connection is established on a series of continuity. What is the request as to when that service connection should be presumptively established for compensation purposes? Oh, great. Well, I believe I understand the question. I mean, the effective date would have been when he filed for compensation in 1978. Okay, not the earlier. Yes, that's what I wanted to be clear about. Yes, it would have been effective the date of the application in 1978. Okay. All right, please proceed. Yes, and so the... Mr. Unruh, just before you leave that point, I guess I'm a little confused. If you're saying 1979, the determination, the rating determination was CUE, in other words, unequivocally incorrect, that would mean that it would date back to 1970, would it not or no? No, it would not because Mr. Clark first applied for benefits in 1978. And so the effective date for the benefit would have been the date of that filing. I mean, I am relying on the continuity symptomology that was present from his within one year of his date of discharge, but because he didn't apply until 1978, the benefits wouldn't have started until that date of application in 1978. And tell us again what the CUE is. I mean, I'm looking at the board's decision, the CAVC decision at six, where they review the evidence and the findings that were made in 1979. So where was the obvious... I mean, we have to look to what the law was in 1979, correct? Correct. Yes, of course. So where was the error in law in 1969? You talk about Savage v. Grover, that was the case law. Right. So the error was that the VA back in 1979, when they issued the rating decision, didn't look to the fact that Mr. Clark had been diagnosed with one of the chronic conditions at 3.309. And had they done that by operation of 3.309... I just get clarification on what you're saying. Could you be a little more specific? What chronic condition and are you talking about 1970 now or the diagnosis in 1970 or in 1979? I'm sorry, maybe I'm wrong, but I'm very confused about this. Okay. I hope to clarify. I am referring to the diagnosis that he first received in late 1978 while his application was pending of paranoid schizophrenia. And paranoid schizophrenia is one of the chronic conditions. And because that diagnosis was in front of the VA, they should have undergone the analysis at 3.30B. And had they done that, they would have seen that he had the continuity of symptomatology back to within one year of his discharge. Therefore, the condition should have been service-connected. Does that clarify, Your Honor? Yes. But I guess, aren't there factual findings that were made by the board and the CAVC that the two were not the same? And it would be an absolute clear legal error? Right. I believe what the court and the board were saying was that he wasn't able to show that he had been diagnosed or treated for paranoid schizophrenia within one year of his discharge. But I believe that that is not a proper interpretation of 3.303B. All that's required is to show continuous symptoms. And I believe that Mr. Clark did show that. And the record at the time in front of the VA in 1979 when they issued the decision did show that he had continuous symptoms from his date of discharge. He didn't need to show that he had been diagnosed or even just that he had symptoms up through the current time when he was diagnosed with the paranoid schizophrenia in 1978. Mr. Unruh, this is Judge Hedges. I'm looking at A6 of the Veterans Court opinion, and there's a line kind of in the middle of the page that says, further, the veteran points to no evidence before the RO in 1978, clearly stating that mental problems developing shortly after service were early manifestations of a later diagnosed chronic psychosis. So whatever challenge Mr. Clark might have brought on direct appeal to the RO's adjudication, he hasn't shown in the Q context that it committed undebatable error and disregard. And so I guess what I'm wondering here is whether there's been a conclusion that whatever the anxiety he was feeling immediately after discharge, the Veterans Court is saying, well, we just don't see anything in the record that made it very clear that the RO would have necessarily needed to see how that has some kind of thread connecting it to the later diagnosis of schizophrenia. And if that's what the Veterans Court said, then why doesn't that basically end the question here? Right. Well, I do believe that in the record, there was evidence of the earlier manifestation of the psychosis. And to get there, I believe one needs to look to 3.307, where it talks about if a chronic condition manifests itself to a compensable degree or equivalent to a 10% rating within the presumptive period, then it meets the standard at 3.303B. And if you look to the regulation in effect at the time at 38 CFR 4.132 under psychosis, it describes the symptoms for a 10% rating as a slight social and industrial adaptability impairment. And there was evidence before the VA at that time that showed that Mr. Clark had significantly more than a slight impairment in both social and occupational adaptability or industrial adaptability. Therefore, I do believe that there was that evidence both before the regional office at the time of the 1979 decision. Okay. And anything else on this point? This is a significant issue. Okay. I'll reserve my time for rebuttal. Okay. Thank you. We'll hear from the government. Ms. Park. May it please the court. Mr. Clark has shown no cue in the court-legs jurisdiction to hear his 3.303B does not require a medical nexus. That still is an outcome determinative because he does not meet the requirements of 3.303B. As just discussed, Mr. Clark can't show that he had a chronic disease during the presumptive period. What he's referring to is the anxiety diagnosis in 1970 or 1971 dependent upon where you look in the record. And that is considered a psychoneurosis as the board and the veterans court correctly found. And to determine- But isn't he really saying that, not really, but actually saying that when the symptoms are the fact that it received a more significant or important or clear diagnosis sometime later doesn't change the fact that there's this continuity of symptoms that we've recognized in precedent as being significant? Well, Your Honor, in this context, he would have to show that there was cue and that the board did not consider something that was on the record before it. And if you look at appendix page 14, it states in the second or the first full paragraph that the board observes that the RO did expressly consider in the February 1979 rating decision certain symptoms such as unsteady work history, marginal adjustment, claim treatment for anxiety. But the board also noted that there were possible secondary gain motives in 1978. So the board looked at and considered all of the pieces of evidence that Mr. Clark now claims show ongoing continuity of manifestation of his paranoid schizophrenia. And the board rejected these. And he cannot show that there's any error in this rejection. He's asking the court to reconsider factual determinations, which the court likes jurisdiction to do. With respect to... No, proceed. Thank you, Your Honor. There's simply no debatable error here. And this... Unless the court has more questions, we're prepared to rest on the briefs because there's... Simply, Mr. Clark cannot show that 3.303B applies. He cannot show that there was a chronic condition within service such that he can link it to his 1978 diagnosis of paranoid schizophrenia, even assuming the 10% manifestation in 3.307, which, again, that would be a factual finding that the court likes jurisdiction to find. So you're saying that the fact that there was, I think, an undisputed continuity of symptomology is irrelevant? I don't believe there is an undisputed continuity of symptomology, Your Honor. Well, worse than a continuity, an enhancement, exacerbation of the symptoms so that ultimately it received a diagnosis of schizophrenia rather than depression. No, Your Honor. In 1970, Mr. Clark was diagnosed with anxiety, and that was a psychoneurosis. And the board considered this diagnosis in light of his 1978 paranoid schizophrenia diagnosis, determined that they were two entirely separate matters, and that there was nothing indicating in the record before it, mainly consisting of 1978 medical records that included some sort of post hoc explanations of unsteady work history, lack of friends, problems such as that, determined that there was simply no connection to in-service mental health issues, that the anxiety was effectively a one-time thing, and also that Mr. Clark himself admitted that there was no mental health concerns. He had no mental health concerns upon separation from service or within one year. And so there is no linkage, and that's a factual finding that this court cannot reconsider. Okay, any more questions for Mr. Clark? No, thank you. No. All right, Mr. Unruh, have you... Thank you. The R.O. at the time of the 1979 decision did not consider paranoid schizophrenia, the diagnosis that he received, and therefore they did not undergo the diagnosis or the analysis at 3.303B. It's true that the VA in 1979 did refer to his work issues and his social issues, but because they didn't undergo the analysis at 3.303B and discuss continuity of symptomology to link a chronic condition to his one year within discharge, those references didn't lead them to 3.303A, but not under 3.303B. And, you know, I would just like to leave the court again to, when we're thinking of continuity of symptomology in this context, I believe you just need to look to 38 CFR 4.132, and at that time, as I said, you know, symptoms for psychosis listed under there are just social and industrial adaptability, which the record clearly showed Mr. Clark had from his date of discharge through the 1979 decision, and the regional office did not look to that evidence, and the board and the veterans court also did not thoroughly investigate them. Well, Mr. Unruh, I'm sorry, I don't want to prolong this, but this is Judge Proust, but I'm just wondering, on the CUE, aren't you required to establish more than the board should have done a more thorough job, and they didn't answer this question? I mean, doesn't there have to be some demonstration that there's an outcome determinative factor here, and I haven't quite heard you give us that at this point. Maybe I just missed it. Well, I'm positing that had the regional office undergone the analysis that's required at 3.303B, they would have service-connected Mr. Clark for paranoid schizophrenia, but they didn't do that, and that's what I'm saying is the outcome determinative error. Okay, thank you. And Mr. Unruh, just so I understand your theory of 3.303B, back in 1970, your client was treated for anxiety, and anxiety is not a chronic disorder. It's not a psychotic, but schizophrenia, which was diagnosed in 1978, is a chronic disease. It is a psychosis, and so is it your understanding of this rule that the anxiety diagnosis in 1970, in order to prevail and have service connection, Mr. Clark needed to have schizophrenia during this entire time period. It's just that he wasn't diagnosed with that in 1970. He was diagnosed with anxiety, but the anxiety that he was diagnosed with is somehow, in retrospect and looking at his entire historical profile, was in fact a symptom of the schizophrenia that he was suffering from back then in 1970. Is that the right way to think about how this rule operates? Or do you think, no, he didn't need to actually suffer from schizophrenia back in 1970 or 71 or 72, so long as he had some milder condition, like anxiety, and he was diagnosed a decade later with schizophrenia, so long as there's some kind of story that can be told that the milder condition he was suffering from in 1970, for whatever medical reason, devolved into schizophrenia a decade later is enough to entitlement to benefits under 3.303B? Yes. I think under the second prong of 3.303B, where there isn't the diagnosis of the chronic condition in service or within the presumptive period, which is what we have here with Mr. Clark, then I do believe that retrospectively, when you make the application for benefits and have the chronic diagnosis, looking back, if you can show continuous symptoms up into the diagnosis of the chronic disease, then yes, I think that that then should lead to a grant of connection under 3.303B. Okay. Just so I understand what you just said, the theory behind this rule is that Mr. Clark had, in fact, schizophrenia back in 1970. It's just that he wasn't diagnosed with it. He was diagnosed with something that could actually be connected to schizophrenia, but then we can establish that through some continuity of symptomology up until he was actually later diagnosed with schizophrenia. Is that your understanding of 3.303B? Correct. I mean, the diagnosis of anxiety and also then the continuous symptoms and the symptom listed under psychosis in the schedule that was in place. I'm just trying to make sure that you're not suggesting that as long as he has some milder non-psychosis condition in 1970 and didn't have schizophrenia back then, but then 10 years later, it evolves, devolves into schizophrenia, then that's still good enough to entitle him to benefit under 3.303B. That's not what you're arguing. I'm not sure I understand. I'm suggesting that one can show through continuity of symptomology that a later diagnosed chronic condition manifested itself, even though it may not have been labeled as chronic at the time in service or in the presumptive period. Well, to make sure, I think that Judge Chin's question really gets to the heart of the concern. You're not arguing that the initial diagnosis was itself powerful enough to warrant a diagnosis of schizophrenia, but that with time, the symptoms worsened or that one doesn't look to see whether there was a worsening in this period until which it was called schizophrenia. Yes. I'm not saying that the diagnosis of anxiety in itself would open up this presumption that we're discussing. It's the continuity of symptomology that occurred from his discharge till 1978 when he was diagnosed with schizophrenia. Was there evidence that the a precursor of schizophrenia? I'm not aware of any explicit notice of that in the record. No. You're relying on the fact that the symptoms continued and presumably worsened. Correct. The symptoms that he had from discharge until 1979 were the symptoms listed under the schedule for psychosis in existence at that time. Okay. Any more questions for Mr. Unruh? No, thank you. All right. Thanks to both counsel. The case is taken under submission.